Manzanares v. Elko County School District et al
Case 3:07-cv-00076-LRH-RAM   Document 40   Filed 09/06/2007   Page 1 of 11
Doc. 40

Kent R. Robison, Esq. (Bar No. 1167)
Clayton P. Brust, Esq. (Bar No. 5234)
Jennifer L. Baker, Esq. (Bar No. 9559)
ROBISON, BELAUSTEGUI, SHARP & LOW
71 Washington Street
Reno, Nevada 89503
Telephone: (775) 329-3151
Facsimile: (775) 329-7941
Attorneys for Defendants
Corporation of the Presiding Bishop of The Church
of Jesus Christ of Latter-Day Saints and
Corporation of the President of The Church of Jesus
Christ of Latter-Day Saints and Successors

ELECTRONICALLY FILED _____

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DA-DAZE-NOM MANZANARES,

　　　　Plaintiff,

vs.

ELKO COUNTY SCHOOL DISTRICT, and
GARY LEE JONES, SR., as agent for ELKO
COUNTY SCHOOL DISTRICT, and GARY LEE
JONES, SR., individually, and CORPORATION
OF THE PRESIDING BISHOP OF THE
CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS, a foreign corporation registered to
do business in the State of Nevada;
CORPORATION OF THE PRESIDENT OF THE
CHURCH OF JESUS CHRIST OF LATTER-
DAY SAINTS AND SUCCESSORS, a foreign
corporation registered to do business in the State
of Nevada; and Does 1-5, and XYZ Corporations
1-5.

　　　　Defendants.
_____/

CASE NO. 07-CV-00076-LRH-RAM

DEFENDANTS CORPORATION OF
THE PRESIDING BISHOP OF THE
CHURCH OF JESUS CHRIST OF
LATTER-DAY SAINTS' and
CORPORATION OF THE
PRESIDENT OF THE CHURCH OF
JESUS CHRIST OF LATTER-DAY
SAINTS AND SUCCESSORS'
OPPOSITION TO PLAINTIFF'S
MOTION TO AMEND FIRST
AMENDED COMPLAINT AND
DEMAND FOR JURY TRIAL

　　　　The Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints and Corporation of the President of The Church of Jesus Christ of Latter-Day Saints and Successors ("the LDS Defendants") respectfully submit the following as and for their opposition to the Plaintiff's Motion to Amend First Amended Complaint and Demand for Jury Trial.

/ / /

# I.

## INTRODUCTION

The Stipulated Discovery Plan and Order thereon (#32) sets the deadline to amend pleadings for August 30, 2007. Plaintiff has complied. Admittedly, the proposed amendment does not add any additional claims or accusations against the LDS Defendants. However, in light of the blatant falsehoods in Plaintiff's motion, in light of Plaintiff's counsel refusal to abide by FRCP 26 and in light of Plaintiff's fundamental violations of FRCP 11, the LDS Defendants must oppose Plaintiff's Motion to Amend.

# II.

## DISCUSSIONS

A. **Falsehoods.**

The LDS Defendants can neither condone nor ~~tolerate~~ [ignore] the blatant misrepresentations contained in Plaintiff's Motion. The false representations are confirmed by the sworn testimony of the Plaintiff. Comparing Plaintiff's sworn testimony to the representations made to the Court in the Motion to Amend, shows a pattern of conduct that is irresponsible and reprehensible.

First, Plaintiff's counsel asserts in paragraph 2 of his Points and Authorities that the "cause of action against the Defendants all stem from a relationship that Defendant Jones established with Plaintiff in his capacity as the Branch President of the LDS Church . . ."

Not true. The Plaintiff testified otherwise. Attached hereto as Exhibit "A" is a true and accurate copy of the first 75 pages of Plaintiff's deposition transcript. Plaintiff's sworn testimony proves the following:

    1.    Ms. Manzanares has never been to the Mormon Church for religious purposes. (P. 41).

    2.    Ms. Manzanares has never participated in a Mormon religious service. (Id.)

    3.    Ms. Manzanares has never been a member of any of the Mormon Church Youth Groups.

    4.    Ms. Manzanares knows nothing about the Mormon Church philosophies. (P. 42).

    5.    Ms. Manzanares was never given teachings or preachings from the Mormon

Church at any time. (P. 42).

6. Ms. Manzanares has no idea what weekly sacrament services are all about. (P. 42).

7. Ms. Manzanares has no knowledge about the Young Women's Relief Society, the Society Services Group, Sunday School Services, monthly fasts or about testimony meetings at the Mormon Church. (P. 43).

8. Ms. Manzanares knows nothing about baptism services and has never attended a baptism service at the Mormon Church. (Pp. 43-44).

9. Ms. Manzanares knows nothing about confirmation, Mormon baby blessings and has never had any affiliation whatsoever with the Mormon Church. (P. 44).

10. Ms. Manzanares has never gone to a Mormon Church function, a Mormon Church dinner, a talent program, observed Mormon Christmas or holiday functions and has no familiarity with the Church structure. (P. 45).

11. Ms. Manzanares has never been requested to be a member of the Church. (P. 46).

12. Ms. Manzanares has never paid a tithing and has never given any money or fast offerings to the Church. (P. 46).

13. Ms. Manzanares has never had any participation in home teachings programs and has never sat down and prayed with anybody from the Mormon Church. (P. 46).

14. Ms. Manzanares has never received any spiritual guidance from anybody from the Mormon Church, including Gary Jones. (Pp. 46-47).

15. Ms. Manzanares' aunt in Salt Lake City tried to expose her to the Mormon Church, but she refused. (P. 47).

16. Ms. Manzanares thinks that Mormons are "crazy". (P. 47).

17. Ms. Manzanares thinks that Mormons have "weird beliefs". (P. 48).

18. **Gary Jones never tried to preach** to Ms. Manzanares. (P. 48).

19. Ms. Manzanares rejected any suggestion made by Jones that she should become a Mormon. (P. 48).

20. **Gary Jones never tried to put the Mormon beliefs** in the mind of Ms.

3

Manzanares. (P. 49).

21. Ms. Manzanares never looked to Gary Jones as a pastor or minister. (P. 49).

22. Ms. Manzanares never looked to Gary Jones for spiritual guidance. (P. 49).

23. Ms. Manzanares never imposed trust or confidence in Gary Jones in a spiritual sense. (P. 49).

24. The "relationship" was not based in any way on Mr. Jones' affiliation with the Mormon Church. (P. 49).

25. Ms. Manzanares' mother told Ms. Manzanares that she did not need Mormon assistance. (P. 50).

26. The Mormon Church did help Ms. Manzanares' family with food assistance. (P. 50). These were services and assistance for which Ms. Manzanares is thankful. (P. 50).

27. Mr. Jones never talked to Ms. Manzanares about Mormon Church activities. (P. 52).

28. Ms. Manzanares is completely unaware of any of the young girl activities that are sponsored and administered by the Mormon Church. (Pp. 52-54).

29. Ms. Manzanares made it absolutely clear to Gary Jones that she wanted nothing to do with the Mormon Church. (P. 54).

30. Ms. Manzanares still wants nothing to do with the Mormon Church. (P. 54).

31. Gary Jones never preached to Ms. Manzanares. (P. 55).

32. Ms. Manzanares never shared her religious beliefs with Gary Jones. (P. 55).

33. Religion was not involved in any way in the relationship between Mr. Jones and Ms. Manzanares. (P. 55).

34. Ms. Manzanares admits that her relationship with Mr. Jones "**had nothing to do with religion**". (P. 56).

Second, in paragraph 3.2 of Plaintiff's Points and Authorities, Plaintiff's counsel states that Mr. Jones sexually abused and molested Plaintiff from "2001 to 2002" including instances of fondling and mutual masturbation as well as instances of oral sex.

Again, not true. In a video taped interview Ms. Manzanares gave to the Elko County

4

Police Department, Ms. Manzanares expressly denied oral sex ever occurred between herself and Mr. Jones. Attached hereto as Exhibit "B" are the pertinent pages of the transcript of that interview.

Even worse, Ms. Manzanares denied that oral sex occurred when she was deposed in the presence of her counsel. There again, Ms. Manzanares, under oath, confirmed that there were <u>no acts of oral sex</u> between her and Mr. Jones. (Exhibit "A", p. 60). It is appalling that Plaintiff's counsel would so blatantly attempt to falsify the record.

Plaintiff's counsel would have this Court believe that intercourse between Mr. Jones and Ms. Manzanares occurred in 2002.

Not true. According to Ms. Manzanares' testimony, sexual encounters occurred four times in 2001. The last act of intercourse was at the Ameritel Inn in Elko, Nevada in November, 2001. (Exhibit "A", p. 62). Ms. Manzanares confirms that there was never any sex at school or on the reservation at Owyhee. (Id., p. 59). Ms. Manzanares testified that her relationship with Jones had nothing to do with Jones' affiliation with the LDS Defendants.

Third, in paragraph 3.3 of Plaintiff's counsel's brief he claims once again that the relationship Jones established was in his capacity "as the Branch President of the LDS Church . . .".

Not true. Religion was "off topic" between Jones and Ms. Manzanares. (Exhibit "A", p. 75). The only reference Ms. Manzanares makes to religion and Mr. Jones is that Jones told Ms. Manzanares' <u>mother</u> to "keep praying", but there was <u>never</u> any counseling. (Exhibit "A", p. 75). Mr. Jones' affiliation with the Mormon Church had <u>nothing</u> to do with his involvement with Ms. Manzanares, (Id., pp. 31, 32, 33 and 34).

Being fully aware of these startling admissions, Plaintiff's counsel contradicts his own client in his moving papers. Perhaps it is an attempt to generate indignation against the LDS Defendants. Perhaps it is an attempt to sensationalize. Whatever the motive, it is wrong for Plaintiff's counsel to misrepresent the truth in his effort to add an additional claim in this action.

Fourth, in paragraph 4 of his Points and Authorities, Plaintiff's counsel suggests that he learned of "evidence and facts" giving rise to the new claim against Defendant Elko County

School District during Plaintiff's deposition. In paragraph 5, he suggests that his initial research did not reveal the possible new claim.

Not credible. Plaintiff's counsel would have us believe that when he filed the original Complaint and when he filed for permission to amend it (the Amended Complaint) he had no knowledge that his client was in a residential treatment facility the fall semester of 2002, thereby causing her to miss "further educational opportunities". *#24)*

The original Complaint and proposed amendment thereto (Doc. #24) clearly suggests otherwise. Paragraph 25 of the original Complaint alleges that Ms. Manzanares' attempted suicide in August of 2002 caused her to be placed "in a mental hospital for several months". Plaintiff's counsel obviously knew on February 13, 2007 (date of the first Complaint) the facts necessary to plead a Title IX Claim. Why posture otherwise?

Finally, Plaintiff's counsel suggests in paragraph 7 of his Points and Authorities that the "facts and the <u>documents</u> proving" the Title IX Claim has been provided. Not true. Plaintiff has not provided the LDS Defendants with Plaintiff's medical records. Yet, the records have been requested. (Exhibit "C" attached hereto). Plaintiff's FRCP 26(f) Initial Disclosure is a curious exercise of providing the Defendants with the exact same documents that the Defendants gave to the Plaintiff with the Defendant's Initial Disclosure. Nowhere in the Plaintiff's disclosure are the Plaintiff's medical records. Instead, Plaintiff suggests they are "available with court order pursuant to HIPAA requirements". (See Exhibit "D" attached hereto, p. 5, item 14). Plaintiff does not need a court order to obtain her own medical records. *Indeed the LDS defendants have had to subpoena the Plaintiff's medical records.*

FRCP 26 contains the general provisions governing discovery. The core concept of Rule 26(a) requires that parties disclose certain information automatically, without the need for discovery requests. First, the Plaintiff must make broad, initial disclosures at or shortly after the discovery meeting is conducted pursuant to Rule 26(f). That occurred. Plaintiff was required to disclose the identity of her witnesses and a description of the documents by category and location that are relevant to her accusations. The claim of damages for psychological injuries *has* never been one that the Plaintiff has substantiated with medical documentation. The Plaintiff must provide a copy of, or a description by category and location, of all documents she may use in

6

support of her claims.

The Plaintiff has not produced any medical records. The suggestion that the Plaintiff was placed in a residential **treatment facility** in Idaho for six months is a suggestion that mandates Plaintiff's production of these pertinent medical records. Plaintiff's counsel represents that the documents necessary to prove the Title 9 claim have been "supplied to Defendants . . . ". (Paragraph 7 of Points and Authorities). That claim is utterly false. The Plaintiff has refused, notwithstanding requests for those records, to produce the necessary medical records that are the basis for the Title IX claim.

The Court should not be misled by the cavalier and untrue representations of Plaintiff's counsel. The fact is, the Plaintiff has not provided the Defendants with any records that substantiate, prove or are relevant to the Title IX claim.

### B. Rule 11 Violations.

FRCP Rule 11 requires every pleading and written motion to be signed by at least one attorney of record. By presenting to the Court a pleading or written motion, the attorney signing the motion is certifying to the Court **that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the allegations and other factual contentions have evidentiary support.** FRCP 11(b)(3). Plaintiff's counsel knows that his client, Ms. Manzanares, contradicts the contents of the Motion to Amend the First Amended Complaint. Plaintiff's counsel knows that contrary to the assertions in paragraph 6 of the proposed Complaint that neither the Plaintiff nor her family were members of The Church of Jesus Christ of Latter Day Saints. Ms. Manzanares has testified that she has never been to a Mormon Church, never participated in the Mormon Church services, knows nothing about the Mormon Church and has never been given any teachings or preachings of the Mormon Church. Ms. Manzanares has confirmed beyond any question or doubt that she is **not a member of the Church**. When Plaintiff's counsel suggests otherwise, he is falsifying his motion inexcusably in violation of Rule 11.

When Plaintiff's counsel represents to the Court in his moving papers that the relationship between Mr. Jones and Ms. Manzanares involved "instances of oral sex" (paragraph

7

3.2 of Points and Authorities) when Ms. Manzanares had testified under oath that there has never been acts of oral sex between her and Mr. Jones (Exhibit "A", p. 60), a Rule 11 violation has occurred. Plaintiff's counsel knows that his allegations and the contents of his Motion to Amend are inexcusably false.

By stating in paragraph 5 of his Points and Authorities that Plaintiff's counsel has provided the Defendants with the Plaintiff's medical records, a Rule 11 violation has occurred. Nothing could be further from the truth. Plaintiff's counsel has not produced any medical records from the "residential treatment facility in Idaho".

When Plaintiff's counsel states in his moving papers that Mr. Jones established a relationship with the Plaintiff "in his capacity as Branch President of the LDS Church", Plaintiff's counsel has violated Rule 11. In section II.A. of this Opposition, the LDS Defendants have cited no less than 34 different areas of Ms. Manzanares' testimony which refutes the truthfulness of Plaintiff's counsel's representations. Plaintiff's counsel should not be permitted to play fast and loose with the truth. Plaintiff's counsel's false assertions that Mr. Jones' religion or affiliation with the LDS Defendants had anything to do with the sexual relationship between Ms. Manzanares and Mr. Jones is a complete and utter falsehood. The Motion to Amend violates the Rule 11 mandate that an attorney's representations to the Court has "evidentiary support" and are not being presented for any improper purpose such as to prejudice the LDS Defendants in the eyes of this Honorable Court.

Because of these inexcusable violations of FRCP Rule 11, the Motion should be denied.

### III.
### AMENDMENTS TO PLEADINGS

Plaintiff relies on FRCP 15 in seeking permission to amend the Plaintiff's Complaint. ~~Courts, however, are obligated to deny a Motion to Amend.~~ Generally, leave to amend is granted unless a weighing of several facts suggests that leave would be inappropriate. <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987). Bad faith, undue delay and prejudice to the opposing party area all sufficient grounds upon which this Court can rely in denying the Plaintiff's Motion to Amend.

Defendants have been prejudiced by the Plaintiff's inexcusable failure to abide by the FRCP 26(a) obligations. The very fact that Plaintiff has failed and refused to produce the necessary medical records is grounds in and of itself to deny the Motion. These records have not been produced. The Plaintiff's refusal to produce the records is bad faith and has created an undue delay. The prejudice to the LDS Defendants is inescapable. Though not specifically charged in the Title IX accusation, the LDS Defendants will nonetheless be subjected to additional discovery costs in participating in Title IX discovery issues. Prejudice is even more profound in light of the serious misrepresentations that have been made to this Court upon which Plaintiff's counsel relies in seeking to amend the Complaint.

Procedurally, the Plaintiff's request is confusing. The Complaint was filed on February 13, 2007. (Doc. #1). The LDS Defendants filed a Motion to Dismiss on April 13, 2007. (Doc. #15). In attempting to defend against the LDS Defendants' Motion to Dismiss, the Plaintiff responded with a Motion for Leave to Amend her Complaint. (Doc. #24). Neither the Motion to Dismiss filed by the LDS Defendants nor the Plaintiff's Motion for Leave to Amend Complaint filed on May 31, 2007, have been decided.

Accordingly, this is in effect the Plaintiff's effort to amend a **proposed** Complaint. The Plaintiff has apparently assumed that her May 31, 2007 Motion to Amend (Doc. #24) has been or will be granted because the proposed Second Amended Complaint contains the identical language of the proposed First Amended Complaint, which has never been authorized. Accordingly, the Plaintiff is seeking more than just adding a new claim for relief. The Plaintiff has incorporated the language in the proposed Second Amended Complaint that has never been ruled upon by this Court because that language is contained in the Plaintiff's proposed First Amended Complaint. The procedural paradox created by the Plaintiff also warrants a denial of the Plaintiff's Motion to Dismiss.

Therefore, the Plaintiff is moving to amend a Complaint that she has not yet been authorized to file.

///

///

9

IV.

## CONCLUSION

For the reasons stated, these LDS Defendants respectfully request that the Plaintiff's Motion to Amend First Amended Complaint and Demand for Jury Trial be denied.

DATED this _____ day of September, 2007.

                                      ROBISON, BELAUSTEGUI, SHARP & LOW
                                      A Professional Corporation
                                      71 Washington Street
                                      Reno, Nevada 89503

By: _____
     KENT R. ROBISON
     CLAYTON P. BRUST
     JENNIFER L. BAKER
     Attorneys for Defendants
     Corporation of the Presiding Bishop of The Church
     of Jesus Christ of Latter-Day Saints and
     Corporation of the President of The Church of Jesus
     Christ of Latter-Day Saints and Successors

J:\WPData\Krr\1105.001\P-Opposition to Motion to Amend First Amended Complaint.wpd

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of ROBISON, BELAUSTEGUI, SHARP & LOW, and that on this date I caused a true copy of **Defendants Corporation of the Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints' and Corporation of the President of The Church of Jesus Christ of Latter-Day Saints and Successors' Motion to Dismiss** to be served on all parties to this action by:

\_\_\_\_\_ placing an original or true copy thereof in a sealed, postage prepaid, envelope in the United States mail at Reno, Nevada.

\_\_\_\_\_ personal delivery/hand delivery

\_\_\_\_\_ facsimile (fax)

\_\_\_\_\_ Federal Express/UPS or other overnight delivery

\_\_\_\_\_ Reno Carson Messenger Service

| | |
|---|---|
| Jeffrey J. Kump, Esq. | Thomas P. Beko, Esq. |
| Marvel & Kemp, Ltd. | Erickson, Thorpe & Swainston, Ltd. |
| 217 Idaho Street | 99 West Arroyo Street |
| P.O. Box 2645 | P.O. Box 3559 |
| Elko, NV 89803-2645 | Reno, NV 89505 |
| Facsimile: (775) 738-0187 | Facsimile: (775) 786-4160 |
| Attorneys for Plaintiff | Attorneys for Defendant |
| | Elko County School District |

Dated this \_\_\_\_\_ day of September, 2007.

_____
V. JAYNE FERRETTO
Employee of Robison, Belaustegui, Sharp & Low